| | |
|---|---|
| 1 | Roger C. Hsu - SBN 170589 |
| 2 | Joseph M. Liu - SBN 220938<br>LAW OFFICES OF ROGER C. HSU |
| 3 | 175 South Lake Avenue, Suite 210 |
| 4 | Pasadena, CA 91101<br>Telephone: (626) 792-7936 |
| 5 | Facsimile: (626) 685-2859 |
| 6 | rchlaw@att.net<br>joseph@liu.com |
| 7 | |
| 8 | Attorneys for Plaintiff/Counter Defendant Interworks Unlimited, Inc. |

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| Interworks Unlimited, Inc., a California corporation, | ) ) ) | Case No. 2:17-cv-4983 AB TJH KSx) |
| Plaintiff, | ) ) ) | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY** |
| v. | ) ) | **JUDGMENT, OR IN THE** |
| Digital Gadgets, LLC., a New Jersey limited liability company, | ) ) ) | **ALTERNATIVE FOR SUMMARY ADJUDICATION OF CLAIMS** |
| Defendant. | ) ) ) ) | Date: December 17, 2018<br>Time: UNDER SUBMISSION<br>Courtroom: 9B |
| Digital Gadgets, LLC., a New Jersey limited liability company, | ) ) ) | |
| Counterclaimant, | ) ) | |
| v. | ) ) | |
| Interworks Unlimited, Inc., a California corporation, | ) ) ) ) | |
| Counter-defendant | ) ) | |

- i -

**EXHIBIT 7**

### INTRODUCTION

Hoverboards were one of the "must-have" items of the holiday season of 2016. Plaintiff/Counter Defendant Interworks Unlimited, Inc. ("Plaintiff"), a distributor of electronic goods, capitalized on the opportunity, and began selling hoverboards through QVC, Inc. ("QVC"). Defendant/Counterclaimant Digital Gadgets, LLC ("Defendant" or "Digital Gadgets"), who represented that they had the ability to get the hoverboards into the hands of the consumers faster, purchased hoverboards from Plaintiff and became indebted to the tune of over 1 million dollars. When it came time to pay for the boards, the Defendant simply refused. Instead of recognizing its liability and fulfilling its obligations, Defendant has attempted to deflect its responsibilities by throwing in a bunch of smokescreens about the Plaintiff and the hoverboards.

While Defendant alleged that the hoverboards were defective and the Plaintiff breached the parties' agreements, the basic premise is undeniable: this is a straight forward collections case. The undisputed material facts show that the Defendant ordered the goods, accepted the goods and, despite complaining that the boards were no good, continued to resell and/or retain the goods. Because the Defendant refused to pay for or return the goods, the Plaintiff is entitled to judgment as a matter of law.

I. **SUMMARY OF STATEMENT OF UNCONTROVERTED FACTS**

In 2016, Plaintiff, a distributor of electronic goods, recognized the increasing market for hoverboards and capitalized on the lucrative opportunity by selling hoverboards called "High Roller Self Balancing Hoverboard, Model C" ("Model C" or "Hoverboard") through QVC, Inc. ("QVC") as a "warehouse item." (Statement of Uncontroverted Material Facts ("SOF") ¶¶1-3) As a "warehouse item," Plaintiff would deliver the hoverboards to QVC, who would deliver them to the purchasing customer. (SOF ¶9) Prior to selling the hoverboards, Plaintiff was required to, and did, submit the Model C to QVC for quality testing, which the Hoverboards passed. A true and correct copy of the report is attached and incorporated hereto as Exhibit 1. (SOF ¶4) QVC, which assigns Stock Keeping Unit ("SKU") numbers to the products it sells, assigned the Model C a SKU number of T34604 ("604"). (SOF ¶ 8)

Plaintiff and QVC enjoyed a successful relationship, and QVC sold the Model C hoverboards until Interworks ran out of inventory. As the holidays approached, QVC wanted to purchase more Model C's from Plaintiff on a "drop-ship" basis. In "drop shipment," QVC continues to sell the products, but the vendor delivers the products directly to the consumer. Plaintiff, however, did not have the ability to "drop ship" the hoverboards to QVC's customers. (SOF ¶¶10, 11) In an effort to facilitate the drop shipment, Plaintiff decided to sell the Model C's to Defendant, who had the ability to drop ship with QVC. (SOF ¶ 12)

A. **HOVERBOARD PURCHASES AND DISCOUNTS**

On or about December 9, 2016, Defendant ordered 4800 Model C's from Plaintiff at $190/unit, agreeing to pay a total of $912,000.00, payable Net 60 Days. (SOF ¶¶14, 15) Per Defendant's instructions, Plaintiff shipped the hoverboards to Phoenix Warehouse in the City of Santa Fe Springs in 8 separate shipments. A true and correct copy of the 8 invoices reflecting these 8 shipments are attached and incorporated hereto as Exhibit 2. A true and correct copy of the 8 picking

- 1 -

sheets reflecting the 8 separate shipments are attached and incorporated hereto as Exhibit 3. And a true and correct copy of the Bills of Lading for each of the 8 shipments are attached and incorporated hereto as Exhibit 4. (SOF ¶¶16, 17). The two parties understood that Defendant was purchasing the same exact units that Plaintiff had been selling through QVC. (SOF ¶13). Defendant eventually requested, and Plaintiff provided, a discount of $30 per unit on 1,613 of the 4800 hoverboards, a total discount of $48,390.00. A true and correct copy of the credit memo for this discount is attached and incorporated hereto as Exhibit 5. Thus, Defendant first purchased $863,610.00 worth of Model C's. (SOF ¶18)

On or about December 23, 2016, Defendant ordered an additional 6000 Model C's, this time agreeing to pay $215.00 each, Net 60 Days, for a total of $1,290,000. (SOF ¶19) The hoverboards were shipped to the Defendant in 5 separate shipments. A true and correct copy of the purchase order sent by the Defendant that reflects this purchase is attached and incorporated hereto as Exhibit 6. A true and correct copy of the 5 invoices reflecting the original purchase price are attached and incorporated hereto as Exhibit 7. (SOF ¶¶19, 21)

Shortly thereafter, Defendant again requested a discount. Plaintiff relented providing a discount of $55 per hoverboard. A true and correct copy of the 5 invoices reflecting the discounted price is attached and incorporated hereto as Exhibit 8. (SOF ¶20). A true and correct copy of the 5 picking sheets reflecting the 5 separate shipments are attached and incorporated hereto as Exhibit 9. A true and correct copy of the Bills of Lading for each of the 5 shipments are attached and incorporated hereto as Exhibit 10. (SOF ¶21)

For the second purchase, Defendant received a total of 5808 hoverboards. (SOF ¶22) While the hoverboards Digital Gadgets sold were identical to those Interworks sold, since they originated from a different vendor, QVC assigned them a new SKU number of T34764 ("764"). These 764 hoverboards were also submitted to, and passed, QVC quality testing. (SOF ¶¶26-29)